UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

RODNEY FREEMAN,
               Plaintiff,

v.     No. 09-CV-414
       (FJS/DRH)

LT. SANTOS, Oneida Correctional Facility;
and JOHN DOES ##1-4, Corrections
Sergeant and Officers, Oneida Correctional
Facility,
               Defendants.

---

**APPEARANCES:**                      **OF COUNSEL:**

RODNEY FREEMAN
Plaintiff Pro Se
05-B-1346
Groveland Correctional Facility
7000 Sonyea Road
Sonyea, New York 14556

HON. ANDREW M. CUOMO            DOUGLAS J. GOGLIA, ESQ.
Attorney General for the        Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Rodney Freeman ("Freeman"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that Lt. Santos ("Santos"), a DOCS employee at Oneida Correctional

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Facility ("Oneida"), and four "John doe" DOCS employees at Oneida violated his constitutional rights under the Eighth Amendment. Compl. (Dkt. No. 1). Presently pending is Santos' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 6. Freeman opposes the motion and filed a cross-motion concerning the accuracy of hearing transcripts which defendant attached to his motion papers.[2] Dkt. No. 13. For the following reasons, it is recommended that defendant's motion to dismiss be denied.

## I. Background

The facts are related herein in the light most favorable to Freeman as the non-moving party. See subsection II(A) infra.

On July 12, 2006, while incarcerated at Oneida, Freeman underwent a disciplinary hearing over which Santos presided. Compl. ¶ 12. Prior to and during the hearing, Freeman accused Santos of bias. Id. ¶ 13. The hearing was terminated and Freeman was placed into a holding cell adjacent to the hearing room to await return to the Special Housing Unit ("SHU").[3] Id. ¶¶13-14. While waiting in the holding room, Freeman observed Santos speak to multiple corrections officers, including John Does 1 and 2. Id. ¶¶ 14-15. While Santos spoke to John Doe 2, he continually "ma[de] references with his head toward

---

[2] The hearing transcript provided by Santos has not been considered since a motion to dismiss is limited to the four corners of the complaint and any documents appended thereto. See subsection II(A)& note 6 infra. Therefore, Freeman's cross-motion is premature and denied without prejudice.

[3] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

2

[Freeman] while continuing to converse . . . ." Id. ¶ 14.  John Does 1 and 2 then entered the holding room, called Freeman a "tough guy," aggressively handcuffed him, and escorted him to SHU.  Id. ¶¶15-19.

Upon arriving at the SHU building, John Doe 1 assaulted Freeman by choking him. Compl. ¶ 20.  Additionally, while walking into the building, John Doe 1 pushed Freeman up the stairs, causing him to fall.  Id. ¶ 21.  From there, John Does 3 and 4 took custody of Freeman, took him into the strip frisk room, and continued to assault him by repeatedly "slamm[ing him] face first into the wall," punching him in the ribs and body, hitting his head, and kicking and stomping him when he fell to the floor.  Id. ¶¶ 22-25.  As a result of the beating, Freeman suffered lacerations on his hands and mouth, trouble breathing, and pain and bruising.  Id. ¶¶26-29.[4]  Freeman began to suffer from mental health ailments, "bec[oming] insane" and requiring two hospitalizations for psychiatric care.  Id. ¶¶ 31, 33. After returning from the second hospitalization, Freeman spoke with John Doe 4.  Id. ¶ 34. During the conversation, John Doe 4 indicated that Freeman was assaulted because "Santos told [the corrections officers] to teach [him] a lesson."  Id.

This action followed.

## II. Discussion

In his complaint, Freeman alleges that his Eighth Amendment rights were violated when (1) he was subjected to excessive force during his transport to SHU and (2) John Does 2

---

[4] Freeman was taken to the infirmary for medical attention under orders of non-party McCabe, an employee of the Mental Health Office.  Compl. ¶ 28.  The medical care was ordered as a result of Freeman's deteriorated physical condition.  Id.  Freeman makes no allegations against any of the individuals involved in his medical care.

3

and 4 and Santos failed to protect him when the assault was occurring.  Additionally, Freeman alleges that Santos conspired to violate his Eighth Amendment rights.  Lastly, liberally reading the complaint, Freeman has alleged that Santos retaliated against him by filing a false misbehavior report[5] and ordering for him to be assaulted because Freeman made complaints against Santos for bias.  Santos moves to dismiss on the grounds that he was not personally involved and that Freeman has failed to establish the elements of a conspiracy claim.

## A. Legal Standard[6]

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When

---

[5] Freeman received a misbehavior report on July 13, 2006, charging him with self-mutilation after the assaults occurred.  Compl. ¶ 32.  Liberally construed, these allegations assert a claim for retaliation.  Santos has not addressed this retaliation claim.

[6] Santos alleges that the court should consider the disciplinary hearing transcript, which he attached to his motion papers.  Generally, consideration of a motion to dismiss "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  However, there are instances where the court may consider documents outside those previously referenced, including when the documents are only "partially quoted in [the] complaint . . .; integral to [the] complaint . . .; [or] relied upon . . . in drafting the complaint . . . ."  Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (internal quotation marks and citations omitted).
    In the present case, there appears to be no special circumstance under which to include evaluation of the transcript.  It was not attached to the complaint as an exhibit and was not incorporated into the complaint by reference.  While Freeman did reference a section of the dialogue which occurred during the hearing in the complaint, he did not explicitly quote any line of questioning.  Compl. ¶ 13.  It is clear by the sum and substance of the pleading that Freeman was not relying upon the hearing transcript to shape his allegations or draft his complaint.  The relevant inquiry into Santos' actions and the assault are not encompassed within the transcript and, thus, it is not integral to the complaint.  Accordingly, this transcript was not considered in deciding the present motion.

considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, --- U.S. --- , 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted).  Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled

5

> to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they 'suggest. . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . or arguments that the submissions themselves do not "suggest, . . ." that we should not "excuse frivolous or vexatious filings by pro se litigants" . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).

## B. Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

6

> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

A position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement.  Wright, 21 F.3d at 501. Thus, Santos cannot be held liable solely because he held a supervisory position at Oneida.  However, Freeman asserts more than liability based on a supervisory role.  He contends that Santos personally orchestrated the assault by conversing with John Doe defendants and ordering them to teach Freeman a lesson.  This allegation is more than a mere conclusion and is supported by facial plausibility as Freeman saw Santos speaking to John Doe defendants while simultaneously gesturing to Freeman, John Does 1 and 2 identifying Freeman as the "tough guy" after speaking with Santos and arriving to transport him, and John Doe 4 indicating that the assault occurred because John Doe defendants were charged by Santos to teach Freeman a lesson.  Compl. ¶¶ 14yup, 15, 34.  Ordering subordinates to perform an unconstitutional assault constitutes direct participation in a constitutional violation. See Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001) (explaining that when evaluating personal involvement of a defendant, direct participation "does not foreclose the liability of a person who, with knowledge of the illegality, participates in bringing about a violation of the victim's rights but does so in a manner that might be said to be "indirect"- such as ordering . . . others to do the unlawful acts . . . .").

Accordingly, Santos' motion to dismiss on this ground should be denied.

### C. Conspiracy

In order to support a claim for conspiracy pursuant to § 1983, there must be "(1) an agreement . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002); Cusamano v. Sobek, 604 F. Supp. 2d 416, 468 (N.D.N.Y. 2009). An agreement must be proven with specificity as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action is insufficient. See Iqbal v. Hasty, 490 F.3d 143,177 (2d Cir. 2007); see also Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir.1999). Thus, plaintiffs must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." Warren v. Fischl, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted). Conclusory, vague, and general allegations are insufficient to support a conspiracy claim. Ciambriello, 292 F.3d at 325.

In this case, construing the facts in the light most favorable to Freeman, he has succeeded in advancing plausible allegations of a conspiracy. Freeman indicates that an order was given to John Doe defendants on June 12, after Freeman's hearing while he was confined in the holding area to teach Freeman a lesson about being a tough guy. Compl. ¶ 34. While Freeman saw the message communicated to John Doe 2, John Doe 1 identified Freeman as the "tough guy" and John Doe 4 expressed the content of the orders after spending time with the other John Doe defendants upon their arrival to the SHU building prior to, and during, Freeman's assault. Thus, it is plausible that while Freeman did not see Santos directly address each John Doe defendant, the message was appropriately

communicated amongst them after it was initially delivered to John Doe 2 immediately after the disciplinary hearing.  The temporal proximity of the assault was directly after Santos gave the order.  At this juncture in the proceedings, this suffices to allege facts sufficient to demonstrate a conspiracy.

Accordingly, Santos' motion on this ground should be denied.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that Santos' motion to dismiss (Dkt. No. 6) be **DENIED**; and

**IT IS ORDERED** that Freeman's cross-motion for a hearing concerning the accuracy of the hearing transcripts is **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 23, 2010
       Albany, New York

_David R. Homer_
United States Magistrate Judge